### DAMAGES FOR FAILURE TO DRILL OIL WELLS.

[Circuit Court of Wood County.]

THE CROWN OIL COMPANY v. ALBERT P. PROBERT.

Decided, November 25, 1905.

*Lease—Of Oil and Gas Lands—Failure to Drill Agreed Number of Wells—Stipulated Damages—Option to Treat Lease as Abandoned —Penalty.*

1. The provision in an oil lease that "in case no well is completed within ninety days from this date then this lease shall be null and void," does not give to the lessee the option of treating the lease as null and void and abandoned, and thereby exonerate himself from liability under a stipulation to pay in default of drilling a second and third well.

2. The provision that after the completion of the first well "the second party shall drill two additional wells at intervals of ninety days, and upon failure to drill said wells or any one of them, it (the lessee, shall forfeit and pay to said first party the sum of one hundred dollars for each well not drilled," does not provide a penalty, but is a provision for stipulated damages.

PARKER, J.; HAYNES, J., and WILDMAN, J., concur.

This action was brought in the court of common pleas by Albert B. Probert against the Crown Oil Company to recover certain sums of money which he alleges were due to him and which he claims upon a certain oil lease, between the parties, Probert being the lessor and the Crown Oil Company the lessee.

The petition sets forth that this lease was executed on the 23d of July, 1903, and covered a certain eighty acres of land in this county, and contains the averment that the defendant under and by virtue of the terms of said lease was required to drill a well upon said premises within ninety days from the execution of said lease, and two additional wells at intervals of ninety days apart from the completion of said first well. It was further stipulated and agreed therein that if the defendant should fail to drill said wells or either of them the defendant should forfeit and pay to plaintiff the sum of one hundred dollars for each well not drilled. It is also averred that there was a

certain stipulation in the lease which required the lessee to free the property of a certain lien, and the third cause of action is based upon the alleged default of the defendant below with respect to that stipulation. Such action was taken in the court below with respect to that cause of action, that no question is presented to this court upon it.

It is averred that this first well was drilled in due time, and the first cause of action is a claim for one hundred dollars on account of the default of the defendant with respect to drilling the second well. The second cause of action is a like claim for a like amount with respect to the alleged default of the defendant in drilling the third well. The petition sets forth a copy of the lease. A demurrer to the petition was overruled and thereupon the defendant took leave to answer, and the answer is as follows:

"The defendant admits its corporate existence, the execution and delivery of the lease by plaintiff, as alleged in the petition, and denies all the other allegations in the petition contained. Defendant says that it entered on said premises and drilled and completed one well within the time specified in the lease for the completion of a well, and that said well did not produce oil or gas in any quantity, and thereupon the defendant abandoned said premises by pulling the casing and all pipe and fixtures and removed them from the premises described in said lease, and offered to surrender the lease to said plaintiff. Defendant further says that the amounts sued for in the first two causes of action, by plaintiff, was intended as and for a penalty to insure the fulfillment of the terms of said lease, and was in nowise intended as and for any part of the consideration for said lease? Defendant further says that there was no consideration for the promise mentioned in said causes of action of plaintiff. Wherefore, defendant prays that it may go hence and recover its costs herein expended."

No reply was filed and the case was submitted to the court below upon the motion of the plaintiff for judgment upon the pleadings. It will be observed by the first clause of the answer that all other allegations of the petition excepting those with respect to the corporate capacity of defendant and the execution and delivery of the lease are denied, and yet by subsequent allegation, all the other material allegations of the petition ap-

pear to be admitted, so that the case stands practically upon the
petition with the additional allegations in the answer that after
the drilling of the first well the defendant abandoned the prem-
ises, and the allegation that these stipulated amounts to be paid
upon default of the drilling of.the second and third wells were
intended as and for a penalty to insure the fulfillment of the
terms of the lease. This last allegation of course is not an alle-
gation of a matter of fact.

There is no allegation of any mistake in the terms of the
lease; no effort to have the lease reformed, and the intent of
the parties is to be determined from the instrument. The lease
stipulates "that for the receipt of one dollar, the receipt of
which is hereby acknowledged, and also for the consideration
of the covenant hereinafter mentioned, has granted, demised
and let unto the said party of the second part," the oil com-
pany, and then follows a description of the premises and the
terms of the lease, which I need not read as a particular clause
in controversy here. Then the lease contains this provision:
"In case no well is completed within ninety days from this
date (unavoidable accident and delays excepted), then this
lease shall be null and void." That is the only stipulation we
find in the lease, the non-performance of which shall result
in rendering the lease null and void. That stipulation was com-
plied with. The well was drilled. Further on in the instrument
we find this:

"It is further agreed that after the completion of the well,
second party shall drill two additional wells at intervals of
ninety days, and upon a failure to drill said wells or any of
them, it shall forfeit and pay to said first party the sum of one
hundred dollars for each well not drilled."

As we understand the argument of plaintiff in error based
upon the answer that this lease was abandoned, it is the con-
tention of counsel that they might abandon the lease and thereby
exonerate the lessee from all liability under the clause of the
requirement that it shall drill or pay upon default of drilling,
and counsel seems to base his contention upon the case of
*Kelly* v. *Van Etten*, 66 O. S., 605. But that lease was materially
different from this one at bar. It contained this stipulation:

"In case no well is completed within thirty days from this date then this grant shall become null and void unless second party shall pay the first party thirty dollars each and every month in advance while such completion is delayed."

That stipulation is similar to the one contained in the lease at bar with respect to the first well to be drilled, but there is no such stipulation in this lease with respect to subsequent wells.

With respect to this stipulation it was held in the Van Etten case that this did not constitute a promise or obligation to pay rental, and it was held further that the lessee had the option to complete wells or pay rentals to keep the lease alive; and that upon breach of the agreement to complete wells, no action would lie for the recovery of rentals. And on page 611, Judge Burket, delivering the opinion of the court, distinguishes it from the case of *Woodland Oil Company* v. *Crawford*, 55 Ohio St., 161; pointing out, "that in that case the lessee agreed to drill certain wells and, upon failure, to pay certain rentals, and it was held that the lessor might elect to enforce the contract to drill, or waive that and enforce the promise to pay rental. There the option was with the lessor. Here, as there is no promise to pay rental, the option is with the lessee, either to drill or pay rental to keep his lease alive, and failing in both, the lease becomes null and void, with an option however in the lessor to treat it as void, or to sue for damages for breach of the contract to complete the wells as specified in the lease," his right being for damages rather than for rental.

The lease in the case at bar is also materially different from that which the court had under consideration in the case of the Woodland Oil Company. Neither of these cases seem to be of very great value in considering the question which we have submitted to us here. It is sufficient to say that there is no option in the lessee to regard this lease as null and void and abandon it, and thereby exonerate it from liability under this stipulation to pay in default of drilling the second and third well.

The only question remaining, or the only one that it seems to us requires much consideration, is that suggested as to the effect of this stipulation; whether it is a stipulation to pay stipulated damages on account of this default or a stipulation

for a penalty, and determine that we must look to the instrument, and we may consider what is universally known respecting the business that is contemplated, the action, operation, and probable results of it. Certain rules upon the subject which we think sufficient for the purpose here are very well and very tersely stated in the 19 Am. & Eng. Ency. of Law. The subject is taken up at page 395. I shall read from the text at pages 389, 399, and especially from pages 401 and 402. It is upon the subject of construction of contracts in case of doubt, and I may say that it is our opinion that there could be no doubt about the intent here to make this stipulated damages, were it not for the phrase "forfeit and pay." Had the word "forfeit" been omitted, we would have had no doubt about it. The text reads:

"1. [*General Rule.*] A frequent statement by the authorities is that the true solution of the whole question of liquidated damages as distinguished from penalty is to be found in the intent of the contracting parties, to arrive at which it is proper to consider the instrument as a whole, the situation of the parties, the subject-mater of the contract, and all the circumstances surrounding its execution. And in addition to this, it has been held to be permissible to prove the value of the property that a party has contracted to convey or deliver, if the contract is of such a nature, as well as the consideration moving from the other party therefor, as a criteria to aid in ascertaining whether a sum to be paid on default is a penalty or liquidated damages.

"2. [*Qualifications of the General Rule.*] The doctrine that the intent of the parties to the contract, when ascertained, controls its construction as to the provision for liquidated damages or penalty, can not be accepted without qualification.

"The intent of the parties will not be regarded, if illegal, in its object, nor will it be effectual if the result would be manifestly to disregard the rule of compensation as damages for the breach of the contract. Again, if the contract was for the payment of money, no stipulation of the parties will be allowed to supersede the measure of damages established by law for the breach of contracts to pay money, namely, legal interest.

"6. [*Language Not Conclusive.*] No rule as to distinguishing between liquidated damages and penalties is better settled that that the language of the parties to the contract and the terms employed descriptive of the amount to be paid are not con-

clusive of the interpretation and legal effect. Thus a sum denominated 'liquidated damages' by the parties, may nevertheless be held to be a penalty, and though the word 'penalty' be used, the sum so termed may be deemed liquidated damages. Where, however, the term 'penalty' is employed, the doctrine of some cases is that it is to be regarded as more nearly conclusive of the intent of the parties than in the opposite case where the language is 'liquidated damages.'

"To the use of the terms 'forfeit,' 'forfeiture,' or 'forfeit and pay,' no very uniform meaning has been ascribed. In some cases such terms have been held to import a penalty, in others liquidated damages. The true rule is that the construction to be given to such phraseology will depend upon its connection with the other parts of the instrument, in the light of all the surrounding circumstances.

"One of the most universally recognized indications that a penalty was intended, and not a mere liquidation of the damages, is that the actual damages on a breach of the contract would be readily ascertainable. Or perhaps the proposition more accurately stated is that this consideration is frequently determinative of the construction which the courts will adopt, irrespective of the intent of the parties.

"Where the contract is of such a nature that the actual damages on a breach would not be readily proved and recovered as such, the courts incline strongly to the view that a sum named therein was intended as a liquidation of the damages of the parties. It has been held indeed, that the only cases in which the courts will carry into effect an agreement to pay a fixed and stipulated amount of damages are those of such nature that the damages resulting from a breach are not regulated with certainty by any rule of law and can not be readily ascertained by a jury. In proportion therefore, as the difficulty of ascertaining the actual damages by proof is greater or less where this difficulty grows out of the nature of such damages, in like proportion is the presumption more or less strong that the parties intended to fix the amount as liquidated damages."

Now that is a general statement of the rule. There are a great many authorities and a great many illustrations cited, but as I say, in this case we believe we have a right to consider what we know about the business of producing oil; what is universally known. This oil and gas lease was given in order that the lessor might derive the profits of the royalty stipulated for. In lieu of the royalty in the event that the wells are not drilled,

he is to have a hundred dollars for each well. The amount does not suggest a penalty, and that fact taken in connection with the other fact that the damages resulting from a failure to comply are not usually ascertainable, indeed, it may be said, I think, can be scarcely ascertained at all with any degree of certainty, it would be mere guess work to fix the damages; and in view of these things we regard the amount so referred to by the parties and upheld by the court, to be stipulated damages, and holding this view, we affirm' the judgment of the court below.

*Earl D. Bloom,* for plaintiff in error.

*Baldwin & Harrington,* for defendant in error.